| | |
|---|---|
| Adams County District Court, Colorado<br>1100 Judicial Center Dr,<br>Brighton, CO 80601<br>(303) 659-1161 | DATE FILED<br>December 8, 2025 9:00 AM<br>FILING ID: 1FBFB9839E771<br>CASE NUMBER: 2025CV31980 |
| Plaintiff:<br><br>    TODD CHAIKEN,<br><br>v.<br><br>Defendant:<br><br>    WALGREEN CO., ET AL. | ▲Court Use Only▲ |
| *Attorney for the Plaintiff:*<br>John W. McKendree, Reg. No. 1209<br>Offices of John W. McKendree, Lawyer & Consultant<br>1287 S. 8th Ave., I-172, Brighton, CO 80601<br>(303) 618-8780<br>jwm@mckendreelaw.com | Case No.:<br><br>Division:<br><br>Courtroom: |
| **VERIFIED COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff, Todd Chaiken by and through his attorney, John W. McKendree, Offices of John W. McKendree, Lawyer & Consultant, and hereby submits his Verified Complaint and Jury Demand against Defendant Walgreen Co., et al., and as grounds therefore states as follows:

**INTRODUCTION, JURISDICTION and VENUE**

1.      At all times material, Plaintiff, Todd Chaiken [Hereinafter, "Plaintiff" or Chaiken"]  has been a resident of the State of Colorado, residing at 2833 Ironwood Circle, Erie, Colorado, 80516 and all issues presented herein relate to Plaintiff's nearly 37 year employment with Defendant Walgreen Co, specifically, Walgreen Co Store 7955, located at 13611 Colorado Blvd., Thornton, Colorado 80602.

2. At all times material, Defendant Walgreen Co. [Hereinafter, "Defendant" and/or "Defendant Walgreen"] is a national retail pharmacy chain that operates over 8,000 retail drugstores and other health facilities nationwide, including over 50 stores in Colorado and as it relates to this civil action, transacts business within Adams, County Colorado which specific location operates out of 13611 Colorado Blvd., Thornton, Colorado 80602 [Hereafter, Store 7955"].

3. Pursuant to Colo. R. Civ. P. Rule 98(c), Venue is appropriate in the District Court for Adams County based on the fact that Plaintiff was employed in Adams County, and Defendants' illegal actions, as alleged herein, were committed within Adams County, Colorado.

4. Plaintiff's suit is for violations of the Age in Employment Discrimination Act [Hereinafter, "AEDA"], 29 U.S.C. §621, *et seq*; Retaliation in Violation of the Family Medical Leave Act [Hereinafter, "FLMA"], 29 U.S.C. §2601, *et seq*, resulting in Plaintiff's wrongful termination.

## GENERAL ALLEGATIONS

5. Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 4 of this Verified Complaint.

6. Plaintiff became employed with Defendant Walgreen on January 26, 1988, beginning his career in the Chicago area and eventually moving to Colorado where he worked as an Assistant Store Manager and a Store Manager (SM) at several different locations, ultimately settling at Store 7955, which he opened and remained for nearly 18 years.

7. On October 9, 2024, Plaintiff went on leave due to shoulder repair surgery, pursuant to Defendant Walgreen policy, Plaintiff utilized one week of PTO followed by

Defendant's Disability Leave which went into effect thereafter and lasted through November 30, 2024.

8. Plaintiff, a protected member under the ADEA and FMLA, then engaged in protected activity when he took FMLA leave from December 1, 2024, to January 2, 2025.

9. Although Plaintiff was paid for his 1-week of PTO leave in October 2024, after further review, Plaintiff noticed, in January, that almost 200 hours of PTO was missing in Defendant's system. After returning from FMLA leave in January 2025, plaintiff reviewed paystubs. Plaintiff believes the 200 hours PTO paid in 2024 was not in compliance with policy. After inquiry, no explanation was given by defendant.

10. Plaintiff notified Defendant Walgreen District Manager, Ryan Paswaters [Hereafter, "Paswaters"], of this discrepancy and his desire to file a formal complaint, which officials from the District Office were supposed to investigate.

11. Upon Plaintiff's return from approved FMLA leave, he sent a follow-up email to Paswaters inquiring about the same; Plaintiff never received a response to his inquiry.

12. Prior to Plaintiff going on approved FMLA Leave, Store 7955 was in pristine condition; upon his return, the store was in shambles. Prior to Mr. Chaiken's leave, he had a leadership team in place; however, Paswaters made personnel changes during Plaintiff's protected leave.

13. Individuals put in place to manage the store by Paswaters, failed in their efforts to maintain the Store; Plaintiff was notified by employees that while he was out, Paswaters was in the store frequently and seemed displeased.

14. It was reported to Plaintiff upon his return to the store after FMLA that while he was out, Paswaters stated to employees of Defendant, that "big things are going to change in January".

15. When Plaintiff returned to work in January on "limited duty" he was adamant in restoring the store condition while being short-staffed and without a First Assistant.

16. The following week, Plaintiff was confronted by Defendant's Loss Prevention, Jon Dalton [Hereafter, "Dalton"] and Paswaters, who questioned him concerning an alert that surfaced on or about October 9, 2024, regarding an unusual amount of vaccination promotional monies being dispensed to a Pharmacy employee. Paswaters and Dalton raised questions about collusion between Plaintiff and the Pharmacy employee; Plaintiff denied any collusion or wrongdoing and explained the legitimate business reasons for the disbursements.

17. Defendant Walgreen never provided a specific figure for what the "correct" payout should have been; instead, they claimed it "seemed too much." That it was not a standard payout although it was flu season, when promotional monies were being earned across the company.

18. Plaintiff could not recall the specific transaction as he had dispensed many promotional monies and made other payroll adjustments such as employees failing to clock in and out for breaks, entering PTO time, and entering sick time in his normal course of duties—all standard operating procedures completed in a day's work. Additionally, the transaction in question occurred months prior.

19. Plaintiff informed Dalton that there was no collusion of any sort and that although he did not recall the transaction, he would not have engaged in anything inappropriate. At the end of the interview, Dalton stated, "we probably will never know the root cause of what happened."

20. On January 21, 2025, Paswaters and Amy Cornell for Defendant Walgreen [Hereafter, "Cornell"], came into Store 7955, and took adverse employment action against the Plaintiff when they notified him that he was being let go.

21. After nearly 37 years of service for Defendant Walgreen, Plaintiff was not provided with any due process nor was he afforded any sort of progressive discipline, demonstrating a causal connection between his age and engagement in FLMA protected activity and the adverse termination he was subjected to.

22. Plaintiff was treated differentially as in 2024, a Market Scheduler mistakenly overpaid a pharmacist by thousands of dollars; the mistake was simply corrected in payroll, and the employee kept their job.

23. Moreover, numerous Walgreen employees fell victim to gift card fraud, despite Defendant having strict procedures, those younger, less tenured employees received written warnings… not termination.

24. Plaintiff timely filed his Charge of Age Discrimination with the U.S. Equal Employment Opportunity Commission [ Hereafter, "EEOC"] on May 21, 2025, EEOC Charge No. 541-2025-03337.

25. Plaintiff received his Notice of Right to Sue from the EEOC on Charge No. 541-2025-03337, on October 31, 2025.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**Age Discrimination in Violation of 29 U.S.C. §621, *et seq*.**
**(Against Defendant Walgreen)**

26.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 25 of this Verified Complaint.

27.     Plaintiff was born on July 18, 1962, at the date of his termination, he was 62 years old and is, therefore, an individual protected by the ADEA.

28.     Defendant intentionally discriminated against Plaintiff on the basis of his age with respect to the tenure and other terms and conditions of Plaintiff's employment.

29.     Throughout Plaintiff's 37 years of employment with Defendant, there have been numerous incidents wherein younger, less tenured employees accused of Defendant Policy violations who were treated differentially and not subjected to adverse employment action which resulted in termination of employment.

30.     As a direct result of Defendant's Age Discrimination, Plaintiff was unlawfully and discriminatorily subjected to adverse employment action and terminated from his employment.

31.     Plaintiff timely filed his Charge of Age Discrimination with the U.S. Equal Employment Opportunity Commission [ Hereafter, "EEOC"] on May 21, 2025, EEOC Charge No. 541-2025-03337 [Attached hereto as Exhibit 1].

32.     Plaintiff received his Notice of Right to Sue from the EEOC on Charge No. 541-2025-03337, on October 31, 2025.

33.     As a direct and proximate result of the Defendant's discriminatory conduct and termination, Plaintiff suffered and continues to suffer injury including but not limited to severe

emotional distress, mental anguish, psychological and emotional pain and suffering. Plaintiff also suffers and continues to suffer pecuniary losses including, but not limited to, lost wages, lost benefits, backpay and future lost wages and benefits, diminished opportunities for career advancement, damage to his re-employment opportunities, liquidated damages and attorney's fees and costs.

### PLAINTIFF'S SECOND CLAIM FOR RELIEF
### Retaliation in Violation of the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*.
### (Against Defendant Walgreen)

34. Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 33 of this Verified Complaint.

35. Plaintiff engaged in protected activity and exercised a right under the FMLA, when he took leave for a shoulder surgery.

36. Upon Plaintiff's return from protected FLMA leave, Plaintiff was subjected to false accusations of collusion and money misappropriation, not allowed due process or progressive discipline after 37 years of service, and was subjected to adverse employment action.

37. Plaintiff's engagement in protected FMLA leave was Defendant's motivating factor, moreover, the temporal proximity from the date Plaintiff returned to work and the decision to terminate his employment was considered by the employer in its decision-making process.

38. As a direct and proximate result of the Defendant's retaliatory conduct and termination, Plaintiff suffered and continues to suffer injury including but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering. Plaintiff also suffers and continues to suffer pecuniary losses including, but

not limited to, lost wages, lost benefits, backpay and future lost wages and benefits, diminished opportunities for career advancement, damage to his re-employment opportunities, liquidated damages and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment in his favor and against the Defendants as follows:

(a) On Plaintiff's First Claim for Relief for Age Discrimination in violation of 29 U.S.C. §621, *et seq*., against Defendant Walgreen in an amount to be determined at trial; and,

(b) On Plaintiff's Second Claim for Relief for Retaliation in Violation of the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*., against Defendant Walgreen, in an amount to be determined at trial.

## JURY DEMAND

Plaintiff, Todd Chaiken demands a Trial by Jury on all issues presented herein.

Respectfully Submitted this 13th day of November 2025.

*s/ John W. McKendree*
John W. McKendree, Atty. Reg. # 1209
Offices of John W. McKendree,
Lawyer & Consultant
1287 S. 8th Ave., I-172,
Brighton, Co, 80601
(303) 618-8780
jwm@mckendreelaw.com

*Pursuant to C.R.C.P. 1212, §1-26, a printed or printable copy of this document with original, electronic, or scanned signatures shall be maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

Plaintiff's Address: 2833 Ironwood Circle, Erie, Colorado, 80516

## VERIFICATION

STATE OF COLORADO        )

                         ) s/s

CITY AND COUNTY OF weld  )

I, Todd Chiaken, have had the Verified Complaint and Jury Demand read aloud to me, and I certify that the information contained herein is true and correct and to the best of my knowledge, information and belief.

s/s __Todd Chaiken__
Todd Chaiken

Subscribed and sworn to before me this 13 day of November, 2025.

by Todd Chaiken.

Witness my hand and official seal.

s/s __Blnly Esme__
Notary Public

My Commission Expires: 04/26/2027        {{SEAL}}

```
BRENDA ALLY ESCANAME MARTINEZ
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20234015836
MY COMMISSION EXPIRES 04/26/2027
```

EEOC No. 541-2025-03337 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| **CHARGE PRESENTED TO:** EEOC | DATE FILED December 8, 2025 11:30 AM FILING ID: 4A7EA9C6561A3 CASE NUMBER: 2025CV31980 **AGENCY CHARGE NO.** 541-2025-03337 |
|---|---|

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Mr. Todd Chaiken

Phone No.: 720-641-7839

Year of Birth: 1962

Mailing Address: 2833 Ironwood Circle

Erie, CO 80516

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Walgreen's

No. Employees, Members: 201 - 500 Employees

Phone No.: 303-501-1934

Mailing Address: 13611 Colorado Blvd

Thornton, CO 80602, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Age

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/21/2025

Latest: 01/21/2025

THE PARTICULARS ARE:

Mr. Chaiken became employed with Walgreens on January 26, 1988, beginning his career in the Chicago area and eventually moving to Colorado where he worked as an Assistant Store Manager and a Store Manager (SM) at several different locations, ultimately settling at Store #7955 which he opened and remained for nearly 18 years. On October 9, 2024, Mr. Chaiken went on leave due to shoulder repair surgery, per Walgreens policy Mr. Chaiken utilized one week of PTO followed by Walgreens' disability leave which went into effect thereafter and lasted through November 30, 2024. Mr. Chaiken, a

protected member under the ADEA and FMLA, then engaged in protected activity when he took FMLA leave from December 1, 2024, to January 2, 2025. Although Mr. Chaiken was paid for his PTO leave in October 2024, after further review,

Mr. Chaiken noticed almost 200 hours of PTO missing in the system after November 1, 2024. Mr. Chaiken notified officials of Walgreens of this discrepancy and his desire to file a formal complaint. Prior to Mr. Chaiken going on approved FMLA Leave, Store 7955 was in pristine condition; upon his return, the store was in shambles. Prior to Mr. Chaiken's leave, he had a

leadership team in place; however, Mr. Paswaters made personnel changes during Mr. Chaiken's leave. The individuals put in place to manage the store by Mr. Paswaters, failed in their efforts to maintain the Store. Mr. Chaiken was notified by employees that while he was out, Mr. Paswaters was in the store frequently and seemed displeased. Mr. Paswaters was heard stating to several employees that, "big things are going to change in January." When Mr. Chaiken returned to

EEOC No. 541-2025-03337 | FEPA No.

work in January on "limited duty" he was adamant in restoring the store condition while being short-staffed and without a First Assistant. The following week, Mr. Chaiken was confronted by Loss Prevention, Jon Dalton, and Mr. Paswaters who questioned him concerning an alert that surfaced on or about October 9, 2024, regarding an unusual amount of vaccination promotional monies being dispensed to a Pharmacy employee. Mr. Chaiken could not recall the specific transaction as he had dispensed many promotional monies in his normal course of duties, in addition, the transaction in question

had occurred months prior. Mr. Chaiken informed Mr. Dalton that there was no collusion of any sort and that although he did not recall the transaction, he would not have engaged in anything inappropriate. On January 21, 2025, Mr. Paswaters and Amy Cornell came into Store 7955, and notified Mr. Chaiken that he was being let go. After nearly 37 years of service for Walgreens, Mr. Chaiken was not provided with any due process nor was he afforded any sort of progressive

discipline.

EEOC No. 541-2025-03337 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Mr. Todd Chaiken
05/21/2025

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name  _____

**CP ENCLOSURE WITH EEOC FORM 5 (06/24)**

**PRIVACY ACT STATEMENT**

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.